# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

SHANE INSANALLY,

Plaintiff,

Index No. _____/20___

-against-

**COMPLAINT**

R.J. REYNOLDS TOBACCO COMPANY
(successor-in-interest to Lorillard Tobacco Company) and
LORILLARD TOBACCO COMPANY,

Defendants.

TO THE SUPREME COURT OF THE STATE OF NEW YORK

The complaint of the plaintiff, <u>Shane Insanally</u>, respectfully shows and alleges as follows:

COMPLAINT FOR DAMAGES
(Breach of Implied Warranty of Merchantability; Design Defect; Fraudulent Misrepresentation; Deceptive Practices – GBL § 349)

I. JURISDICTION & VENUE

This Court has general jurisdiction over Defendants under CPLR §§ 301–302. Defendants design, advertise, distribute, and sell Newport brand cigarettes in New York, generating over $500 million in annual statewide sales (NY Dept. of Taxation 2023), and maintain systematic business operations here. Venue in Queens County is proper under CPLR § 503 because Plaintiff resides here and the wrongful conduct (marketing, sale, and injury) occurred here. This action is not preempted under the Tobacco Control Act, 21 U.S.C. § 387p(b), which preserves state law claims, including those based on product defect and deceptive marketing.

II. PARTIES

Plaintiff Shane Insanally is a resident of Queens County, New York. From 1998 through July 2025, Plaintiff started smoking while a teenager, purchased and smoked Newport menthol brand cigarettes exclusively, believing them to be merchantable and safe for their ordinary purpose. During those years he tried to quit smoking and was unable because of the developed addiction from design of the defendants' tobacco products, menthol's effect for increasing depth, causing a severe lung defect. In April 2025 he was diagnosed for a severe lung defect, confirmed by pulmonary function test showing significant airflow limitation and reduced capacity. This condition significantly restricts airflow, as confirmed by pulmonary testing, leading to chronic respiratory impairment. Symptoms began in March 2025, the first pulmonary test was on April 2, 2025 at Ghumman Chaudhry MD, FCCP FAASM, Pulmonary and Sleep Medicine PC, 218-38 Hillside Avenue, Queens Village, NY, 11427, the second test was on 7/07/2025 at Pervaiz Iqbal MD, 116-16 Liberty Avenue, Richmond Hill, NY 11419, the third test was 8/04/2025 at Optum Primary Care, 1 Dakota Drive, New Hyde Park, NY, 11042, the fourth test was 9/11/2025 at Prime Care Medical Group, 116-06 Hillside Avenue, Jamaica, NY, 11432. Three results indicated a severe lung defect and one result indicated emphysema.

Defendant Lorillard Tobacco Company ("Lorillard") designed and manufactured mentholated cigarettes sold under the Newport brand, directing marketing to New York consumers from at least 1998 until its

2015 merger into RJR. Defendant R.J. Reynolds Tobacco Company ("RJR") acquired Lorillard in 2015, succeeding to all liabilities. Together they control 35% of the New York tobacco market (FDA 2024).

## III. FACTUAL ALLEGATIONS

### A. Implied Warranty of Merchantability

Under UCC § 2-314, Defendants impliedly warranted that Newport cigarettes were merchantable—that is, fit for the ordinary purposes for which cigarettes are used, adequately labeled, and conforming to promises on the packaging. Newport cigarettes were neither safe nor fit for ordinary smoking, due to their design, resulting to an unreasonably dangerous cigarette. The cigarette's were designed to be addictive and carcinogenic, thus not fit for it's ordinary purpose. The "ordinary purpose" includes the consumer's expectation that the product, not be unreasonably dangerous or deceptively engineered, the opposite is a fact.

The ordinary purpose is not merely mechanical inhalation, but safe and merchantable consumption consistent with consumer expectations. New York case law interprets merchantability under UCC § 2-314 as fitness includes safety for human consumption, not just functionality. No reasonable consumer expects a product lawfully sold in the marketplace to be intentionally engineered to cause breathing difficulty, emphysema, COPD and addiction. Merchantability includes reasonable safety, and that cigarettes engineered with excessive toxins and addiction traps fail consumer expectations. Merchantability was breached because Defendants could have designed a less harmful product (e.g., lower nicotine/tar yields, non-mentholated), but chose not to. Example was with City of New York v. Philip Morris USA, 2004 WL 2259000 (N.Y. Sup. Ct.), where safer alternatives were discussed. Plaintiff relied on the cigarettes being merchantable, safe enough for use as marketed, not deliberately engineered to harm. Plaintiff would not have smoked or continued if the implied warranty had not been breached.

A reasonable consumer would not expect a cigarette to be designed with chemical additives and menthol enhancements for the purpose of making addiction more severe and quitting more difficult—especially without disclosure. The cigarettes did not conform to the reasonable expectations of safety and fitness under UCC § 2-314.

Haglund v. Philip Morris (Mass. 2002), cigarettes breach merchantability because they are defectively designed beyond reasonable danger.

Musgrave v. R.J. Reynolds Tobacco Co. (N.D. Fla. 2010, Engle progeny cases) – many plaintiffs succeeded on warranty claims because companies intentionally concealed design dangers.

Plaintiff repeatedly attempted to quit using Newport menthol cigarettes but was unable due to the heightened addiction caused by the product's engineered design. The cigarettes' composition, including menthol and increased nicotine delivery, directly caused Plaintiff's continued use and contributed to the development of serious lung disease.

The Newport cigarettes smoked by Plaintiff were unmerchantable because they contained unnecessarily high levels of harmful carcinogens and toxicants. As found by the court in United States v. Philip Morris USA, Inc., 449 F. Supp. 2d 1, 250 (D.D.C. 2006), cigarette smoke contains a cocktail of dangerous substances, including 'carbon monoxide, nitrogen oxides, cyanide, benzypyrenes, radioactive polonium, arsenic, aldehydes, nitrosamines, numerous toxins, and other human carcinogens.' 449 F. Supp. 2d at 250 (Finding of Fact #511). Defendants, through their design and manufacturing processes, had the ability to control and reduce the levels of these harmful constituents but chose not to do so. Instead, they engineered a product that delivered high doses of these toxins to maximize addictiveness and smoking satisfaction, making the cigarettes unreasonably dangerous and unfit for their ordinary purpose.

Case 1:25-cv-06134   Document 1-3   Filed 11/03/25   Page 4 of 25 PageID #: 13

The specific design choices made by Lorillard and R.J. Reynolds Tobacco Company (the type of tobacco, additives, menthol, ventilation,) resulted in a product that was more toxic than a standard, merchantable cigarette.

B. Design Defects

1. Defendants manipulated menthol and nicotine yields to maximize addictiveness, despite internal knowledge of harms, causing Newport cigarettes to be inherently dangerous. See United States v. Philip Morris USA, Inc., 449 F. Supp. 2d 1, 27–29, 852–55 (D.D.C. 2006),(finding fraud under RICO). Internal documents (e.g., 1985 Lorillard memo, "menthol increases youth uptake") show deliberate design choices that rendered the product unsafe. The cigarettes also had unnecessarily high levels of carcinogens.

Newport cigarettes were defectively designed, rendering them unreasonably dangerous, because they intentionally contained addictive levels of nicotine and manipulated menthol delivery. Lorillard deliberately engineered its product to deliver high doses of tar and nicotine while containing excessive carcinogens and menthol which caused addiction and increased the risk for harm, resulting to the Plaintiff's development of a severe lung defect.

Menthol was deliberately included not as a benign flavoring agent, but as a pharmacological tool to mask the harshness of smoke, thereby enabling deeper inhalation and greater nicotine absorption—a combination that made addiction stronger and cessation more difficult. These effects were neither disclosed nor reasonably expected by consumers, rendering the product unfit for ordinary use. Menthol was used to cool and anesthetize the throat, misleading consumers about the harshness of the smoke and encouraging deeper inhalation, which increases the deposition of harmful particles in the lungs.

The newport cigarettes contained unnecessarily high levels of harmful carcinogens and toxicants beyond what is inherent in ordinary tobacco.
The citation for the list of toxins and carcinogens is:
United States v. Philip Morris USA, Inc., 449 F. Supp. 2d 1, 250 (D.D.C. 2006)
The specific paragraph is Finding of Fact #511, which begins on page 250 of the court's opinion.
Exact text from the case:
511. Cigarette smoke contains carbon monoxide, nitrogen oxides, cyanide, benzypyrenes, radioactive polonium, arsenic, aldehydes, nitrosamines, numerous toxins, and other human carcinogens. Samet WD, 22:15-23:10. Carcinogens and toxins are absorbed into the bloodstream when cigarette smoke in inhaled. Samet WD, 23:11-24:3.

The defendant's had control of the product and could have reduced these levels. The levels of toxins were unnecessarily high.

Referencing Evans v. Lorillard Tobacco Co, 2011, 2004-2840-B. The Massachusetts courts found that Lorillard breached the implied warranty of merchantability because Newport cigarettes were deemed unreasonably dangerous due to their design.

Referencing USA et al v. Philip Morris et al, 2006, Civil Action No. 99-2496 (GK)

Page 375

1.    864 By 1988, almost every major public health organizations, including the Surgeon General, the National Institute on Drug Abuse, the World Health Organization, the American Psychiatric Association, the Harvard School of Public Health, and others, had declared that smoking is an addiction driven by the drug nicotine. Benowitz WD, 26:3-36:8.

2. 865. Further reflecting the consensus judgment that nicotine is addictive, the investigation by the FDA leading to its Final Tobacco Rule issued in August 1996 confirmed that even under the stringent criteria employed by the FDA, nicotine in cigarettes is an addictive drug. Henningfield WD, 159:9-161:22. The FDA concluded in its August 1996 Final Rule that, "All major public health organizations in the United States and abroad with expertise in tobacco or drug addiction now recognize that the nicotine delivered by cigarettes and smokeless tobacco is addictive." 1996 FDA Jurisdictional Determination, 61 Fed. Reg. 44619 (August 1996) at xv, VXA 1242326-3211 at 2572 (US 64323).

3. 866. Defendants' own expert, Dr. Rowell, not only agreed that nicotine plays an essential role in cigarette smoking, Rowell TT, 3/23/05, 16625:12-25, but that "there is clearly addiction for cigarette smoking." Rowell TT, 3/24/05, 16790:4-16.

4. 867. As the documentary evidence laid out in great detail infra shows, over the last forty years, Defendants have been no stranger to the term "addiction" in reference to smoking. In-house tobacco industry research, research not disclosed to the 1964 Surgeon General's Advisory Committee, showed drug addiction-like effects, including tolerance, withdrawl, compulsive use, and craving.

5. 869. Published research indicates that 77% to 92% of smokers are addicted to nicotine in cigarettes. 1996 FDA Jurisdictional Determination, VXA1242326-3211 at 2335, 2528 (US 64323).

6. 870. Many smokers and potential smokers are unaware of or do not fully appreciate the addictive nature of nicotine, the addictiveness of cigarette smoking, and the extent to which nicotine delivery and dosage are highly controlled and engineered. Weinstein WD, 61:5-74:2.

7. 871. Every year, an estimated seventeen million people in the United States attempt to quit smoking. Fewer than one and a half million, or 8% succeed in quitting permanently. Benowitz TT, 11/1/04, 4505:2-4506:13.

Page 380

8. Defendants were well aware that smoking and nicotine are addictive.

882. The wealth of documentary evidence examined int his Section, as well as Sections V(C) and (D), reveals that for decades Defendants knew and internally acknowledged that nicotine is an addictive drug, that cigarettes are a nicotine delivery device, and that addiction can be enhanced and perpetuated through manipulating both the amount of nicotine and the method of nicotine delivery. Much of Defendants' knowledge of nicotine was obtained from in-house and industry-funded research into the pharmacological effects of the drug.

Page 381

9. 884. Defendants have studied nicotine and its effects since the 1950s. The documents describing their research into and resulting knowledge of nicotine's pharmacological effects on smokers -- whether they characterized that effect as "addictive," "dependence" producing or "habituating,"-- demonstrate unequivocally that Defendants understood the central role nicotine plays in keeping smokers smoking, and thus its critical importance to the success of their industry.

10. 885. Defendants' internal records also demonstrate that they knew that cigarette smoking, and tobacco in particular, were the vehicles for delivering nicotine - - the critical component in maintaining the addiction necessary to sustain and enhance their profits. Indeed, Defendants purposely designed and sold products that delivered a pharmacologically effective dose of nicotine in order to create and sustain nicotine addiction in smokers. Henningfield WD, 87:19-103:13.

Page 382

11.     887, These industry documents also support the conclusion that Defendants knew early on in their research that if a cigarette did not deliver a certain amount of nicotine, new smokers would not become addicted, and "confirmed" smokers would be able to quit.

12.     888. The evidence set forth in this Section demonstrates the extensive knowledge Defendants have had since the 1950s about nicotine's addictive effects on smokers, their use of that knowledge to maintain and increase the sale of cigarettes, and their decades-long efforts both to deny the turth about the addictive nature of nicotine and to conceal their own internal research which generated that information.

Page 250

511.     Cigarette smoke contains carbon monoxide, nitrogen oxides, cyanide, benzypyrenes, radioactive polonium, arsenic, aldehydes, nitrosamines, numerous toxins, and other human carcinogens. Samet WD, 22:15-23:10. Carcinogens and toxins are absorbed into the bloodstream when cigarette smoke in inhaled. Samet WD, 23:11-24:3.

On the National Library of Medicine website, https://pmc.ncbi.nlm.nih.gov/articles/PMC2672326/, (official website of the United States Government), an article from Rafael Laniado-Laborin, Professor at School of Medicine, Universidad Autónoma de Baja California, México, titled "Smoking and Chronic Obstructive Pulmonary Disease (COPD). Parallel Epidemics of the 21st Century", the article indicates "one hundred million deaths were caused by tobacco in the 20th century", "Chronic obstructive pulmonary disease (COPD) is rapidly becoming a global public health crisis with smoking being recognized as its most important causative factor."

On the U.S. Centers for Disease Control and Prevention website, (an official website of the United States Government) https://www.cdc.gov/tobacco/about/cigarettes-and-copd.html, an article titled "Health Effects of Cigarettes: Chronic Obstructive Pulmonary Disease (COPD) indicates "Chronic obstructive pulmonary disease (COPD) refers to a group of diseases that cause airflow blockage and breathing-related problems. COPD includes emphysema, chronic bronchitis, and in some cases, asthma. With COPD, less air flows through the airways that carry air in and out of your lungs.

 C. Fraudulent Misrepresentation

Defendants' actions resulted to fraud. Although the Surgeon General issued warnings in 2004, Defendants continued marketing "Light & Refreshing", "The Lighter Side of Pleasure, "Alive with Pleasure", "Newport Pleasure", "Pleasure! Fire It Up!" for Newport cigarettes. The decision to use words of "Alive" and "Pleasure" provided the viewers, including the Plaintiff, with an understanding, immediately relating life and living with smoking, which puts thoughts of death and tobacco-related disease away from the forefront of the viewer's thoughts. "Pleasure" is part of youth targeting, portraying Newports as fun and enjoyable and subconsciously, sexual. Their graphic advertisements often included a female and a male. The models in the advertisements were often young, depicting a carefree disposition, a strategy used to appeal to young persons, often immature and easily mislead. In graphic advertisements, couples are portrayed to be involved with activities, camping, playing a sport, biking, surfing. These activities portray smoking as healthful, involving an active life, the actual result of smoking is illness, often related to the lungs. T. Point-of-sale displays ("Smooth & Cool") omitted mandated warnings, misleading consumers about safety. The "Smooth" & Cool" advertisement for menthol cigarettes was a method to mask the harshness of smoke with menthol and make their cigarette products more appealing, decreasing the ability for the person to quit and increasing their addiction, with the use of menthol and nicotine. Plaintiff smoked Newport menthol cigarettes. The plaintiff experienced an injury as a result of the misleading actions. Defendants' marketing misrepresented safety, inducing Plaintiff's purchase and continued use.

Defendant's conduct was deceptive and a conscious disregard for life. The defendant's marketing strategy were misleading actions.

Referencing USA et al v. Philip Morris et al, 2006, Civil Action No. 99-2496 (GK)

1.      Page 1114, "Lorillards" "Newport '95 Promotional Platform Preliminary Presentation" dated Novelmber 30, 1994 stated that one objective was "to develop a comprehensive Newport Promotion Program which…Enhances image as one of the 'cool' brands" 91945211-5218 at 5216 (US 85208).

2.      A November 11, 1994 presentation by McCracken Brooks for Lorillard, titled "Newport Promotional Concepts," stated that one of the "objectives" was to "strengthen Newport's competitive edge was the peer brand among young adult smokers." 91949806-9831 at 9808 (US 57155).

3.      Newport's 1994 Brand Plan stated that "Newport is the leading menthol cigarette brand among younger adult smokers in the freshness segment, positioned to appeal primarily to general market/urban center adult smokers ages 18-24" and that "Newport's creative product must strengthen Newport's competitive edge as the 'peer' brand among younger adult smokers." 91945017-5124 at 5033, 5045 (US 21113).

4.      A July 1994 report, titled "An evaluation of the Newport 'Pleasure on Wheels' Promotion Tiers 1 and 2, "prepared for Lorillard by Meyers Research Center stated the tone of the "primary marketing objectives" of this promotion was to "reinforce Newport's image as the 'peer brand among young adult smokers." This report was attached to a July 26, 1994 memorandum titled "Final Report: Newport P.O.W. Promotion Evaluation in Tiers I and II MPID #5543/394" from Scott Benson, Lorillard Manager of Consumer Research, to Victor Lindsley, Lorillard Senior Group Brand Director, 91840214-0311 at 0218 (US 74415); 94291134-1139 AT 1134 (us 21119).

5.      A July 15, 1996 memorandum from Dick Westwood at Strategy & Tactics, Ltd. To Scott Benson, Group Manager of Marketing Research at Lorillard, regarding "The Menthol Market Study Reanalysis," concluded: Brand imagery should be pursued as the primary level Lorillard can deploy in acting against the menthol market. Some Image Segments are, indeed, taste-based (for example, the Taste/Sensation segment with its focus on mintiness and iciness), and it is appropriate to pursue such segments through a taste-centered strategy. But other market segments -- including the Social Acceptance segment which is Newport's primary strengthen -- are defined by more subjective aspects of imagery and, for these, taste profiles need to be subsumed to fitting the image that the Company is seeking to create… From a tasee perspective, Newport…competes primarily with Kool. However, the two brands play in different Image Segments -- Social Acceptance and Strength respectively, and thus do not interact as directly as taste along would suggest. Thus, for example, although both brands skew to males and African Americans, Newport has been able to attract a considerably younger adult smoker as its user base. 96290861-0869 at 0869 (US 85209*).

6.      In approximeately 1998, Lorillard undertook a nationwide advertising campaign for Newport cigarettes captioned "Pleasure! Fire It Up!" in newspapers and magazines. Among several treatments, "Pleasure! Fire It Up! advertising depicted attractive young men and young women smoking cigarettes, often in circumstances involving sports and other physical activities. (no bates) (US 11209); (no bates) (US 11247); (no bates) (US 11257); (no bates) (US 11283); (no bates) (US 114767); (no bates) (US 14637); (no bates) US 12477).

The "Newport 2000 Strategic Plan Overview," dated October 8, 1999, stated that "the Newport Family as Lorillard's core power volume brand must contribute significant volume and share growth…" A "Key Issue" was Newport's need to strengthen its marketing programs:

Newport's marketing programs have not been strong enough in a substantially changed marketplace to protect the brand's core business base, significantly improve volume and share trends, or defend against Marlboro Menthol's aggressive marketing initiatives.

The "Creative Strategy" to increase volume and gain long term growth was:

Develop creative executions that continue to strengthen and refresh Newport's competitive advantage as a the peer brand of choice among younger adult smokers by reinforcing the perception that Newport delivers smoking pleasure in social settings relative to their lifestyles… Continue to leverage the Pleasure campaign equity to reinforce the brand's fun, spontaneous, upbeat image through a variety of settings portraying social interaction, spontaneous fun, refreshment and smoking situations.

98196660-6681 at 6661, 6665, 6671 (US 56954). The "Newport 2001 Strategic Plan Overview," dated June 9, 2000, set forth "Marketing Objectives" identical to the year 2000 plan. 99310880-0893 at 0884-0885 (US 57656) (Confidential).

Page 289

  D.      In the 1950s, Defendants Began Their Joint Campaign to Falsely Deny and Distort the Existence of a Link Between Cigarette Smoking and Disease, Even Though Their Internal Documents Recognized Its Existence.

  610.    Beginning in the 1950s, all Defendants, including TIRC, the Tobacco Institute and TIRCs successor, The Council for Tobacco Research U.S.A., Inc. ("CTR"), issued numerous false public statements designed to mislead the public about the connection between cigarette smoking and disease.

Feasible, safer alternatives existed, such as cigarettes with nicotine yields below 0.5 mg or filtered designs that minimized tar and harmful carcinogens, but Defendants suppressed research and failed to adopt them. Defendants suppressed safer alternatives (e.g., low-nicotine cigarettes) to maintain addictiveness (City of New York v. Philip Morris USA, 2004 WL 2259000 (N.Y. Sup. Ct. 2004)). The safer alternative reasoning is self evident, a cigarette with less harmful chemicals was possible, but the defendant's intentionally chose a cigarette  design with harmful chemicals, including menthol, causing addiction to reduce the chance of quitting and increasing sales, manufactured and distributed the cigarette's. Defendant's conduct was deceptive and a conscious disregard for life, affecting the consumer's involved, including the Plaintiff.


IV. CLAIMS FOR RELIEF
COUNT I – Breach of Implied Warranty of Merchantability (UCC § 2-314)
Defendants impliedly warranted that Newport cigarettes were merchantable and safe for ordinary smoking. They breached this warranty by selling cigarettes with design defects (excessive menthol/nicotine manipulation to create an addictive product, carcinogens, excessive toxicity). Plaintiff relied on this warranty and was harmed. The tobacco product, due to its harmful effects, was not fit for its ordinary purpose, thereby breaching this warranty. Plaintiff used the cigarettes for their ordinary purpose and was injured as a direct and proximate result of Defendants' breach of the implied warranty of merchantability.

As a result, Plaintiff has sustained severe and permanent personal injuries, pain and suffering, and economic damages, and is entitled to compensatory damages.

COUNT II – Design Defect (Strict Liability)
Newport cigarettes due to addictive design were unreasonably dangerous. Newport cigarettes due to nicotine and carcinogenic qualities of the tobacco product constitute a design defect that made it unreasonably dangerous. The design defect was a substantial factor in causing Plaintiff's addiction and subsequent lung disease.

INDEX NO. 729101/2025
RECEIVED NYSCEF: 09/29/2025

COUNT III – Deceptive Practices (GBL § 349)
Defendants engaged in misleading actions with marketing menthol Newport cigarettes ("Smooth & Cool", "Alive with Pleasure", "Newport Pleasure" campaigns), the Plaintiff suffered an injury as a result. Reference to C. Fraudulent Misrepresentation

Plaintiff's Injuries
Plaintiff developed a severe lung defect causing breathing difficulty, shortness of breath,, psychological harm, (anxiety, depression, humiliation), loss of enjoyment of life. Inability to participate in sports previously enjoyed, including tennis and swimming.

Defendants' conduct was willful, reckless, and malicious, justifying punitive damages. They knowingly designed an unreasonably dangerous product, suppressed health risks, and targeted vulnerable populations—demonstrating a conscious disregard for consumer safety.

V. REQUEST FOR RELIEF
Plaintiff requests:
• Compensatory damages due to injury and non-economic significant losses, lost future earnings, pain and suffering, emotional distress, for amount $3,000,000.
• Punitive damages for amount $10,000,000.
• Treble damages under GBL § 349(h);

Dated: September 24, 2025

Pro Se

Shane Insanally

175-05 Wexford Terrace

Apt. 6M, Jamaica, NY, 11432

insanallys@outlook.com

347-842-6807

8 of 8



**Ghumman Chaudhry MD FCCP FAASM**
**Pulmonary and Sleep Medicine PC**
**218-38 Hillside Avenue**
**Queens Village NY 11427**

Date: 04/02/25
Name: INSANALLY, SHANE
ID: 740969332
Age: 40      Height(in): 72
Weight(lb): 116    Gender: Male
Race:

**Technician: VP**
**Physician: GHUMMAN CHAUDHRY MD**

**Diagnosis:**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Dyspnea Rest: No | Dyspnea Exercise: No | | | | | | |
| Cough: No | Persistent: No | | Productive (cc): | | | | |
| Smoker: No | Cigarettes: No | | Cigars: No | | Pipe: No | | |
| How Long: | Quit: No | | Stopped: | | | | |

| | | Ref | Pre | % Ref | Post | % Ref | %Chg |
|---|---|---|---|---|---|---|---|
| **Spirometry** | | | | | | | |
| FVC | Liters | 5.47 | 1.15 | 21 | 1.21 | 22 | 5 |
| FEV1 | Liters | 4.49 | 0.69 | 15 | 0.66 | 15 | -6 |
| FEV1/FVC | % | 82 | 60 | 74 | 54 | 66 | -11 |
| FEF25-75% | L/sec | 4.63 | 0.52 | 11 | 0.42 | 9 | -19 |
| IsoFEF25-75 | L/sec | 4.63 | 0.52 | 11 | 0.58 | 13 | 13 |
| PEF | L/sec | 9.79 | (1.01) | (10) | (0.76) | (8) | -25 |
| FET100% | Sec | | 3.03 | | 3.48 | | 15 |

| | | | | | |
|---|---|---|---|---|---|
| **Diffusing Capacity** | | | | | |
| DLCO | mL/mmHg/min | 23.5 | 16.6 | 71 | |
| DL Adj | mL/mmHg/min | 23.5 | 16.6 | 71 | |
| DLCO/VA | mL/mHg/min/L | 4.26 | 5.19 | 122 | |
| DL/VA Adj | mL/mHg/min/L | | 5.19 | | |
| VA | Liters | | 3.19 | | |
| IVC | Liters | | 1.03 | | |
| BHT | Sec | | 12.71 | | |



**Calibration Data:** Temp: 31 PBar: 741
Flow Cal Date: 05/01/23    Pred Volume: 3.00  Expire Avg: 2.99  Inspire Avg: 3.00
PF Reference: Knudson (1983)                        Version: IVS-0101-21-1A

**Name: INSANALLY, SHANE**          **ID: 740969332**

### Comments:

A 40Y.O. MALE PATIENT WITH HX OF MODERATE DYSPNEA ON MILD EXERTION & OCCASIONAL COUGH. PT GAVE GOOD EFFORT &COOPERATION. PFT DONE FOR EVALUATION. PULSE OXIMETRY AT REST: SP02=97 % P.R.=88

### Computer Intepretation:

Based on the FEV1, there is a severe obstructive lung defect. Because expiratory time to FVC is less than 5 seconds, the degree of obstruction may be underestimated. The airway obstruction is confirmed by the decrease in flow rate at peak flow and flow at 25%, 50% and 75% of the flow volume curve. An additional restrictive lung defect cannot be excluded by spirometry alone. On the basis of this study, more detailed pulmonary function testing may be useful if clinically indicated. There is a mild decrease in diffusing capacity. This is interpreted as an insignificant response to bronchodilator.

By signing this interpretation the physician is acknowledging that he/she has reviewed the computer interpretation and, in his/her professional opinion, this is a true and accurate reflection of the patient's current clinical condition.

CHAUDHRY M.S. GHUMMAN, MD, FCCP,FAASM
GHUMMAN MEDICAL CARE, PC
215-38 HILLSIDE AVE.
QUEENS VILLAGE, NY 11427
TEL:(718)465-7746 FAX:(718)465-1199

**Interpretation**

Resting Pulmonary Function Studies were requested to evaluate symptoms of Dyspnea on Exertion.SHANE INSANALLY is 72 inches tall and weights 116 pounds or 52.7 kilograms. The Body Mass Index is calculated at 15.74.



**Pervaiz Iqbal MD**
**116-16 Liberty Ave**
**Richmond Hill, NY 11419**
**718-641-1117**

Date: 07/07/25
Id: 01071985
Name: INSANALLY, SHANE
Physician: DR.IQBAL
Technician: LUSINE

Age: 40        Height(in): 60.0        Race:                    Gender: Male    Weight(lb): 116
Diagnosis:                              Medication:
Dyspnea Rest: No        Dyspnea Exercise: No           Cough: No              Productive (cc):
Persistent: No          Smoker: No                     How Long(pk/yrs):      Stopped(yrs):
Cigarettes: No          Cigars: No                     Temp: 22               PBar: 766

### PULMONARY FUNCTION ANALYSIS



#### Spirometry

|            |        | Ref  | Pre Meas | Pre % Ref | Post Meas | Post % Ref | Post % Chg |
|------------|--------|------|----------|-----------|-----------|------------|------------|
| FVC        | Liters | 3.63 | 1.71     | 47        | 1.27      | 35         | -25        |
| FEV1       | Liters | 2.96 | 1.48     | 50        | 1.16      | 39         | -22        |
| FEV1/FVC   | %      | 79   | 87       |           | 91        |            |            |
| FEF25-75%  | L/sec  | 3.51 | 1.51     | 43        | 1.28      | 37         | -15        |
| PEF        | L/sec  | 6.91 | 2.18     | 32        | 1.57      | 23         | -28        |
| FET100%    | Sec    |      | 2.79     |           | 1.60      |            | -43        |
| FIVC       | Liters | 3.63 | 0.01     | 0         | 0.00      | 0          | -83        |
| FIF50%     | L/sec  |      |          |           |           |            |            |
| FVL ECode  |        |      | 110011   |           | 000011    |            |            |
| MVV        | L/min  | 131  |          |           |           |            |            |

#### Lung Volumes

| ▣ TLC |
| ▣ ERV |
| ▣ RV  |

| VC      | Liters | 3.63 |
| TLC     | Liters | 4.56 |
| RV      | Liters | 1.35 |
| RV/TLC  | %      | 31   |
| FRC N2  | Liters | 2.60 |
| ERV     | Liters | 1.19 |
| IC      | Liters | 2.38 |



#### Diffusion          Hb:

| DLCO      | 20.1 | 121.5 | 605 |
| DL Adj    | 20.1 | 121.5 | 605 |
| VA        | 5.06 | 34.14 | 674 |
| DLCO/VA   | 4.40 | 3.56  | 81  |
| DL/VA Adj |      | 3.56  |     |
| IVC       | 0.50 | 1.08  |     |

Version: IVS-0101-27-2                                    PF Reference: Morris/Polgar

**Name: INSANALLY, SHANE**                    **ID: 01071985**

### Maximal Respiratory Pressures

|  |  | Ref | Pre Meas | Pre % Ref |
|---|---|---|---|---|
| PI max | cmH2O | 121 | | |
| PI Volume | Liters | | | |
| PE max | cmH2O | 226 | | |
| PE Volume | Liters | | | |

### Single Breath Oxygen

| VC (SBO2) | Liters | 3.63 |
|---|---|---|
| N2 Delta/L | % | 1.1 |
| CV/VC | % | 15 |
| CC/TLC | % | |
| CV | Liters | |

### Arterial Blood Gases

|  | pH | PCO2 mmHg | PO2 mmHg | HCO3 meq/L | BE | Hb gm/dL | SaO2 % | P(A-a)O2 mmHg | CaO2 Vol% | FIO2 % |
|---|---|---|---|---|---|---|---|---|---|---|
| Lvl 1 | | | | | | | | | | |
| Lvl 2 | | | | | | | | | | |
| Lvl 3 | | | | | | | | | | |

**Comments**

### Computerized Interpretation

Based on the FEV1, there is a moderate obstructive lung defect. Because expiratory time to FVC is less than 5 seconds, the degree of obstruction may be underestimated. The airway obstruction is confirmed by the decrease in flow rate at peak flow and flow at 50% and 75% of the flow volume curve. An additional restrictive lung defect cannot be excluded by spirometry alone. On the basis of this study, more detailed pulmonary function testing may be useful if clinically indicated.

By signing this interpretation the physician is acknowledging that he/she has reviewed the computer interpretation and, in his/her professional opinion, this is a true and accurate reflection of the patient's current clinical condition.

### Interpretation

Low FEV₁
Low FVC
FVC | FEV₁
DlCO Nml
Obstructive

Nml

lung disorder

8/1/25

Version: IVS-0101-27-2                                                                 Page 2



**Name: INSANALLY, SHANE**

**ID: 01071985**

PRE____

POST____

Case 1:25-cv-06134 Document 1-3 Filed 11/03/25 Page 15 of 25 PageID #: 24

# Shane R Insanally

Patient Health Summary, generated on Sep. 26, 2025

## Patient Demographics - Male; born Jan. 07, 1985

| Patient Address | Patient Name | Communication |
|---|---|---|
| 175-05 WEXFORD TERRACE *(Home)* JAMAICA, NY 11432 | Shane R Insanally | 347-842-6807 (Work) 347-842-6807 (Mobile) insanallys@outlook.com |
| *Former (Aug. 01, 2025 - Jul. 31, 2025):* 17505 WEXFORD *(Home)* REGO PARK, NY 11374 | | |
| *Former (Aug. 01, 2025 - Jul. 31, 2025):* 62 -67 99 ST. *(Home)* 1ST FL REGO PARK, NY 11374 | | |

| Language | Race / Ethnicity | Marital Status |
|---|---|---|
| English (Preferred) | Other Race / Not Hispanic or Latino | Unknown |

## Note from OptumCare East

This document contains information that was shared with Shane R Insanally. It may not contain the entire record from OptumCare East.

## Allergies

No known active allergies

## Medications

**budesonide (Pulmicort) 0.5 MG/2ML nebulizer solution** (Started 8/4/2025)
   Take 2 mL (0.5 mg) by nebulization in the morning. Rinse mouth with water after use to reduce aftertaste and incidence of candidiasis. Do not swallow.
**arformoterol (Brovana) 15 MCG/2ML nebulizer solution** (Started 8/4/2025)
   Take 2 mL (15 mcg) by nebulization in the morning and at bedtime.
**sertraline (Zoloft) 50 MG tablet** (Started 8/4/2025)
   Take 1 tablet (50 mg) by mouth 1 (one) time a day.

## Active Problems

| Problem | Noted Date | Diagnosed Date |
|---|---|---|
| Breathlessness on exertion | 08/04/2025 | |
| Abnormal weight loss | 08/04/2025 | |
| Anxiety problem | 08/04/2025 | |

## Social History

| Tobacco Use | Types | Packs/Day | Years Used | Date |
|---|---|---|---|---|
| Smoking Tobacco: Former | Cigarettes | | | |
| Smokeless Tobacco: Never | | | | |

Tobacco Cessation: Counseling Given: Not Answered

| Alcohol Use | Standard Drinks/Week |
|---|---|
| Never | 0 (1 standard drink = 0.6 oz pure alcohol) |

| Sex and Gender Information | Value | Date Recorded |
|---|---|---|
| Sex Assigned at Birth | Not on file | |
| Legal Sex | Male | 06/16/2021 4:31 PM EDT |
| Gender Identity | Not on file | |
| Sexual Orientation | Not on file | |

Case 1:25-cv-06134    Document 1-3    Filed 11/03/25    Page 16 of 25 PageID #: 25

| Vital Sign | Reading | Time Taken | Comments |
|---|---|---|---|
| Blood Pressure | 104/66 | 08/04/2025 10:50 AM EDT | |
| Pulse | 89 | 08/04/2025 10:50 AM EDT | |
| Temperature | 36.1 °C (96.9 °F) | 08/04/2025 10:50 AM EDT | |
| Respiratory Rate | - | - | |
| Oxygen Saturation | 96% | 08/04/2025 10:50 AM EDT | |
| Inhaled Oxygen Concentration | - | - | |
| Weight | 51.7 kg (114 lb) | 08/04/2025 10:50 AM EDT | |
| Height | 179 cm (5' 10.47") | 08/04/2025 10:50 AM EDT | |
| Body Mass Index | 16.14 | 08/04/2025 10:50 AM EDT | |

## Procedures

**PULMONARY FUNCTION TESTING** (Performed 8/4/2025)

Performed for Shortness of breath

## PULMONARY FUNCTION TESTING - Final result (08/04/2025 12:39 PM EDT)

| Anatomical Region | Laterality | Modality |
| --- | --- | --- |
| | | Pulm Lab Room |

| Specimen (Source) | Anatomical Location / Laterality | Collection Method / Volume | Collection Time | Received Time |
| --- | --- | --- | --- | --- |
| | | | | |

### Narrative

**This result has an attachment that is not available.**

| Authorizing Provider | Result Type | Result Status |
| --- | --- | --- |
| Urmila Shivaram MD | PFT ORDERABLES | Final Result |

## X-ray Chest 2 Views (XR CHEST 2 VIEWS) - Final result (08/04/2025 11:09 AM EDT)

| Anatomical Region | Laterality | Modality |
| --- | --- | --- |
| Chest | | Computed Radiography |

| Specimen (Source) | Anatomical Location / Laterality | Collection Method / Volume | Collection Time | Received Time |
| --- | --- | --- | --- | --- |
| | | | 08/04/2025 11:09 AM EDT | |

### Impressions

**08/04/2025 5:55 PM EDT**

No radiographic evidence of active cardiopulmonary disease.
Electronically signed: 08/04/2025 05:55 PM Jeffrey Miller, MD

### Narrative

**08/04/2025 5:55 PM EDT**

XR CHEST 2 VIEWS: 8/4/2025 10:50 AM

INDICATION: Shortness of breath.

TECHNIQUE: Chest, 2 views (PA and lateral).

COMPARISON: There are no previous examinations available for comparison.

FINDINGS:

No focal consolidation.
No pleural effusion or pneumothorax.
Heart normal in size.
Osseous structures unremarkable.

### Procedure Note

**Jeffrey Miller, MD - 08/04/2025**

Case 25-cv-00634    Document 1-3    Filed 11/03/25    Page 18 of 25 PageID #: 27

XR CHEST 2 VIEWS: 8/4/2025 10:50 AM

INDICATION: Shortness of breath.

TECHNIQUE: Chest, 2 views (PA and lateral).

COMPARISON: There are no previous examinations available for comparison.

FINDINGS:

No focal consolidation.
No pleural effusion or pneumothorax.
Heart normal in size.
Osseous structures unremarkable.

Impression:

No radiographic evidence of active cardiopulmonary disease.
Electronically signed: 08/04/2025 05:55 PM Jeffrey Miller, MD

| Authorizing Provider | Result Type | Result Status |
|---|---|---|
| Urmila Shivaram MD | IMG XR PROCEDURES | Final Result |

## Care Teams

| Team Member | Relationship | Specialty | Start Date | End Date |
|---|---|---|---|---|
| **Iffat Sadique**<br>NPI: 1104845155<br>1122A Coney Island Avenue<br>BROOKLYN, NY 11230<br>718-739-2201 (Work)<br>917-764-2375 (Fax) | PCP - RTE Returned PCP | | 8/1/25 | |
| **Iffat Sadique**<br>NPI: 1104845155<br>16806 HILLSIDE AVE<br>SECOND FLOOR<br>JAMAICA, NY 11432-4341<br>718-739-7400 (Work)<br>718-934-1449 (Fax) | PCP - General | General Practice | 8/4/25 | |

Primary Care Provider

**Iffat Sadique** (Aug. 04, 2025 - Present)
NPI: 1104845155
718-739-7400 (Work)
718-934-1449 (Fax)
16806 HILLSIDE AVE
SECOND FLOOR
JAMAICA, NY 11432-4341
General Practice
**OptumCare East**
coeambulatory@optum.com
655 New York Ave NW
WASHINGTON, DC 20001

Other Service Providers

**Iffat Sadique** (RTE Returned PCP)
NPI: 1104845155
718-739-2201 (Work)
917-764-2375 (Fax)
1122A Coney Island Avenue
BROOKLYN, NY 11230
General Practice
**OptumCare East**
coeambulatory@optum.com
655 New York Ave NW
WASHINGTON, DC 20001

Document Coverage Dates

Jan. 07, 1985 - Sep. 26, 2025

Custodian Organization

**OptumCare East**
coeambulatory@optum.com
655 New York Ave NW
WASHINGTON, DC 20001

Legal Authenticator

**Him D**



If you take your Lucy record on a thumb drive to a different doctor, he or she might be able to use his computer to read the file electronically. Your downloaded, machine-readable Personal Health Summary document is in a format called "CDA." If your doctor has a computer that understands CDA, your information is a folder on your thumb drive called **MachineReadable_XDMFormat**. You might need to enter a password before your doctor can use this file.

Copyright ©2025 Epic

Shane R Insanally

Summary of Care, generated on Sep. 26, 2025

## Patient Demographics - Male; born Jan. 07, 1985

| Patient Address | Patient Name | Communication |
|---|---|---|
| 175-05 WEXFORD TERRACE *(Home)* JAMAICA, NY 11432 | Shane R Insanally | 347-842-6807 (Work) 347-842-6807 (Mobile) insanallys@outlook.com |
| *Former (Aug. 01, 2025 - Jul. 31, 2025):* 17505 WEXFORD *(Home)* REGO PARK, NY 11374 | | |
| *Former (Aug. 01, 2025 - Jul. 31, 2025):* 62 -67 99 ST. *(Home)* 1ST FL REGO PARK, NY 11374 | | |

| Language | Race / Ethnicity | Marital Status |
|---|---|---|
| English (Preferred) | Other Race / Not Hispanic or Latino | Unknown |

## Note from OptumCare East

This document contains information that was shared with Shane R Insanally. It may not contain the entire record from OptumCare East.

## Reason for Visit

| Reason |
|---|
| Lung Eval |
| Shortness of Breath |

## Encounter Details

| Date | Type | Department | Care Team (Latest Contact Info) | Description |
|---|---|---|---|---|
| 08/04/2025 11:00 AM EDT | Office Visit | Optum Pulmonary and Sleep Medicine - Lake Success 1 Dakota Drive, Suite 218 NEW HYDE PARK, NY 11042-1008 516-608-2890 | **Urmila Shivaram, MD** 1 Dakota Dr, Ste 218 LAKE SUCCESS, NY 11042 516-608-2890 (Work) 516-608-2891 (Fax) | |

## Allergies - documented as of this encounter (statuses as of 09/26/2025)

No known active allergies

## Medications - documented as of this encounter (statuses as of 09/26/2025)

| Medication | Sig | Dispense Quantity | Last Filled | Start Date | End Date | Status |
|---|---|---|---|---|---|---|
| budesonide (Pulmicort) 0.5 MG/2ML nebulizer solution | Take 2 mL (0.5 mg) by nebulization in the morning. Rinse mouth with water after use to reduce aftertaste and incidence of candidiasis. Do not swallow. | 60 mL | | 08/04/2025 | 08/04/2026 | Active |
| arformoterol (Brovana) 15 MCG/2ML nebulizer solution | Take 2 mL (15 mcg) by nebulization in the morning and at bedtime. | 60 mL | | 08/04/2025 | | Active |
| sertraline (Zoloft) 50 MG tablet | Take 1 tablet (50 mg) by mouth 1 (one) time a day. | 30 tablet | | 08/04/2025 | 08/04/2026 | Active |

## Active Problems - documented as of this encounter (statuses as of 09/26/2025)

| Problem | Noted Date | Diagnosed Date |
|---|---|---|
| Breathlessness on exertion | 08/04/2025 | |
| Abnormal weight loss | 08/04/2025 | |
| Anxiety problem | 08/04/2025 | |

| Tobacco Use | Types | Packs/Day | Years Used | Date |
|---|---|---|---|---|
| Smoking Tobacco: Former | Cigarettes | | | |
| Smokeless Tobacco: Never | | | | |

Tobacco Cessation: **Counseling Given:** Not Answered

| Alcohol Use | Standard Drinks/Week | | | |
|---|---|---|---|---|
| Never | 0 (1 standard drink = 0.6 oz pure alcohol) | | | |

| Sex and Gender Information | | Value | | Date Recorded |
|---|---|---|---|---|
| Sex Assigned at Birth | | Not on file | | |
| Legal Sex | | Male | | 06/16/2021 4:31 PM EDT |
| Gender Identity | | Not on file | | |
| Sexual Orientation | | Not on file | | |

## Last Filed Vital Signs - documented in this encounter

| Vital Sign | Reading | Time Taken | Comments |
|---|---|---|---|
| Blood Pressure | 104/66 | 08/04/2025 10:50 AM EDT | |
| Pulse | 89 | 08/04/2025 10:50 AM EDT | |
| Temperature | 36.1 °C (96.9 °F) | 08/04/2025 10:50 AM EDT | |
| Respiratory Rate | - | - | |
| Oxygen Saturation | 96% | 08/04/2025 10:50 AM EDT | |
| Inhaled Oxygen Concentration | - | - | |
| Weight | 51.7 kg (114 lb) | 08/04/2025 10:50 AM EDT | |
| Height | 179 cm (5' 10.47") | 08/04/2025 10:50 AM EDT | |
| Body Mass Index | 16.14 | 08/04/2025 10:50 AM EDT | |

## Ordered Prescriptions - documented in this encounter

| Prescription | Sig | Dispense Quantity | Last Filled | Start Date | End Date |
|---|---|---|---|---|---|
| sertraline (Zoloft) 50 MG tablet | Take 1 tablet (50 mg) by mouth 1 (one) time a day. | 30 tablet | | 08/04/2025 | 08/04/2026 |
| arformoterol (Brovana) 15 MCG/2ML nebulizer solution | Take 2 mL (15 mcg) by nebulization in the morning and at bedtime. | 60 mL | | 08/04/2025 | |
| budesonide (Pulmicort) 0.5 MG/2ML nebulizer solution | Take 2 mL (0.5 mg) by nebulization in the morning. Rinse mouth with water after use to reduce aftertaste and incidence of candidiasis. Do not swallow. | 60 mL | | 08/04/2025 | 08/04/2026 |

## Progress Notes - documented in this encounter

### Urmila Shivaram, MD - 08/04/2025 11:00 AM EDT

Formatting of this note is different from the original.
Images from the original note were not included.

Optum Pulmonary and Sleep Medicine at Lake Success

Urmila Shivaram M.D.

Shane R Insanally is referred for evaluation.

The following portions of the chart were reviewed this encounter and updated as appropriate:

HPI
HPI the patient is a 40-year-old male with history of increasing dyspnea since March of this year. Prior to that he smoked 15 cigarettes a day for 27 years. He quit smoking in March because of shortness of breath. In the beginning he had cough productive of sputum which was tinged with blood. Right now he has no cough. He can not walk more 2 blocks. He can not climb a flight of stairs. The patient is currently unemployed. In the past he had various office jobs.
He has been this weight since 12 years. He eats dinner only because he wants to maintain this low weight. It does not like to eat too much food because it will make him sleepy. It does not want to sleep too much. He has been missing his grandmother who died 12 years back. Since then he was depressed. He saw a psychiatrist and he was not happy with the interaction.

22 of 25 PageID #: 31

He states that he does not want to take medications which improve his sleep.

Review of Systems
Review of Systems
Constitutional: Positive for fatigue. Negative for activity change, appetite change, chills, fever and unexpected weight change.
HENT: Negative for ear pain and trouble swallowing.
Eyes: Negative for discharge, redness and visual disturbance.
Respiratory: Positive for shortness of breath. Negative for cough and chest tightness.
Cardiovascular: Negative for chest pain, palpitations and leg swelling.
Gastrointestinal: Negative for abdominal pain, constipation, diarrhea, nausea and vomiting.
Endocrine: Negative for cold intolerance and heat intolerance.
Genitourinary: Negative for decreased urine volume, difficulty urinating, dysuria, hematuria and urgency.
Skin: Negative for rash and wound.
Neurological: Negative for dizziness, seizures, syncope, facial asymmetry and headaches.
Hematological: Negative for adenopathy. Does not bruise/bleed easily.
Psychiatric/Behavioral: Negative for agitation, confusion, hallucinations and self-injury. The patient is nervous/anxious.


Objective
Physical Exam
Constitutional:
Comments: Extremely thin appearing male. He does not make eye contact most of the time.
HENT:
Head: Normocephalic.
Nose: Nose normal.
Mouth/Throat:
Mouth: Mucous membranes are moist.
Pharynx: Oropharynx is clear.
Eyes:
Extraocular Movements: Extraocular movements intact.
Cardiovascular:
Rate and Rhythm: Normal rate and regular rhythm.
Pulmonary:
Effort: Pulmonary effort is normal.
Breath sounds: Normal breath sounds.
Abdominal:
General: Bowel sounds are normal.
Palpations: Abdomen is soft.
Musculoskeletal:
General: Normal range of motion.
Cervical back: Neck supple.
Skin:
General: Skin is warm.
Neurological:
General: No focal deficit present.
Mental Status: He is alert and oriented to person, place, and time.
Psychiatric:
Mood and Affect: Mood normal.


Visit Vitals
BP 104/66 (BP Location: Right arm, Patient Position: Sitting)
Pulse 89
Temp 96.9 °F (36.1 °C) (Temporal)
Ht 5' 10.47" (1.79 m)
Wt 114 lb (51.7 kg)
SpO2 96%
BMI 16.14 kg/m²
Smoking Status Former
BSA 1.6 m²


No visits with results within 2 Week(s) from this visit.
Latest known visit with results is:
No results found for any previous visit.


No current outpatient medications on file.

**Assessment/Plan**

Dyspnea on exertion

Patient has severe dyspnea on minimal exertion. He has history of smoking for 27 years. Pulmonary function testing reveals severe reduction in the FEV1, FVC and DLCO. PFTs consistent with emphysema. We will do chest CT scan to better evaluate the lung parenchyma.

In the meantime the patient will be treated with nebulized budesonide and formoterol to improve his lung function

Abnormal loss of weight

Patient has a BMI of 16. He has not been eating more than dinner for the last several years as per his history. He eats salad for dinner. He was offered medications to improve his appetite. He states that he does not like to waste his time eating and then sleeping more.

Anxiety

Patient has anxiety and maybe some other psychiatric issues that need to be addressed. He gives history of being depressed since his grandmother passed away. He did not want to pursue diagnosis or management with a psychiatrist. We will give him Zoloft at this time.

Spent 50 minutes evaluating the patient and understand his issues. Patient is very smart and had deep insight into bigger issues, however it was difficult to analyze his pressing issues.

Dr. Urmila Shivaram

Electronically signed by Urmila Shivaram, MD at 08/04/2025 12:54 PM EDT

## Plan of Treatment - documented as of this encounter

Scheduled Orders

| Name | Type | Priority | Associated Diagnoses | Order Schedule |
|---|---|---|---|---|
| CT Chest Without IV Contrast | Imaging | Routine | Shortness of breath | Expected: 08/04/2025, Expires: 08/04/2026 |

## Procedures - documented in this encounter

| Procedure Name | Priority | Date/Time | Associated Diagnosis | Comments |
|---|---|---|---|---|
| PULMONARY FUNCTION TESTING | Routine | 08/04/2025 12:39 PM EDT | Shortness of breath | |

## Results - documented in this encounter

PULMONARY FUNCTION TESTING - Final result (08/04/2025 12:39 PM EDT)

| Anatomical Region | Laterality | Modality |
|---|---|---|
| | | Pulm Lab Room |

| Specimen (Source) | Anatomical Location / Laterality | Collection Method / Volume | Collection Time | Received Time |
|---|---|---|---|---|
| | | | | |

Narrative

**This result has an attachment that is not available.**

| Authorizing Provider | Result Type | Result Status |
|---|---|---|
| Urmila Shivaram MD | PFT ORDERABLES | Final Result |

## Visit Diagnoses - documented in this encounter

Diagnosis

Shortness of breath - Primary

Anxiety problem

Abnormal weight loss

Breathlessness on exertion

Case 1:25-cv-06134 Document 1-3 Filed 11/03/25 Page 24 of 25 PageID #: 33

**Guarantor: Insanally, Shane R**

| Account Type | Relation to Patient | Date of Birth | Phone | Billing Address |
|---|---|---|---|---|
| Personal/Family | Self | 01/07/1985 | 347-842-6807 (Work) | 175-05 WEXFORD TERRACE JAMAICA, NY 11432 |

## FIDELIS MEDICAID

| Member | Subscriber | Plan / Payer (Effective 11/01/2021-Present) |
|---|---|---|
| Name: **Insanally, Shane R** <br> Member ID: 74096933200 <br> Relation to Subscriber: **Self** | Name: **Insanally, Shane R** <br> Subscriber ID: 74096933200 | Payer ID: **1295 (NAIC)** <br> Group ID: **Not on file** <br> Type: **Not on file** <br> Phone: **888-343-3547** <br> Address: <br> PO BOX 898 <br> AMHERST, NY 14226-0898 |

## Care Teams - documented as of this encounter

| Team Member | Relationship | Specialty | Start Date | End Date |
|---|---|---|---|---|
| **Iffat Sadique** <br> NPI: 1104845155 <br> 1122A Coney Island Avenue <br> BROOKLYN, NY 11230 <br> 718-739-2201 (Work) <br> 917-764-2375 (Fax) | PCP - RTE Returned PCP | | 8/1/25 | |
| **Iffat Sadique** <br> NPI: 1104845155 <br> 16806 HILLSIDE AVE <br> SECOND FLOOR <br> JAMAICA, NY 11432-4341 <br> 718-739-7400 (Work) <br> 718-934-1449 (Fax) | PCP - General | General Practice | 8/4/25 | |

Case 1:25-cv-06134    Document 1-3    Filed 11/03/25    Page 25 of 25 PageID #: 34

| Primary Care Provider | Other Service Providers | Document Coverage Dates |
|---|---|---|
| **Iffat Sadique** (Aug. 04, 2025 - Present)<br>NPI: 1104845155<br>718-739-7400 (Work)<br>718-934-1449 (Fax)<br>16806 HILLSIDE AVE<br>SECOND FLOOR<br>JAMAICA, NY 11432-4341<br>General Practice<br>**OptumCare East**<br>coeambulatory@optum.com<br>655 New York Ave NW<br>WASHINGTON, DC 20001 | **Iffat Sadique** (RTE Returned PCP)<br>NPI: 1104845155<br>718-739-2201 (Work)<br>917-764-2375 (Fax)<br>1122A Coney Island Avenue<br>BROOKLYN, NY 11230<br>General Practice<br>**OptumCare East**<br>coeambulatory@optum.com<br>655 New York Ave NW<br>WASHINGTON, DC 20001 | Aug. 04, 2025 |

Custodian Organization

**OptumCare East**
coeambulatory@optum.com
655 New York Ave NW
WASHINGTON, DC 20001

| Encounter Providers | | Encounter Date |
|---|---|---|
| **Urmila Shivaram, MD** (Attending)<br>NPI: 1215025473<br>516-608-2890 (Work)<br>516-608-2891 (Fax)<br>1 Dakota Dr, Ste 218<br>LAKE SUCCESS, NY 11042<br>Pulmonary Disease | **Urmila Shivaram** (Attending) | Aug. 04, 2025 |

Legal Authenticator

**Him D**