UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **SHANE INSANALLY**, Plaintiff, – against – **R.J. REYNOLDS TOBACCO COMPANY**, Defendant. | : | **MEMORANDUM DECISION AND ORDER** 25-CV-6134 (AMD) (PK) |

**ANN M. DONNELLY**, United States District Judge:

The *pro se* plaintiff brings this action against the defendant for defective design, fraud, and deceptive practices under New York state law, and a breach of the implied warranty of merchantability, arising out of the defendant's alleged advertising and sale of and the plaintiff's use of Newport menthol cigarettes. (ECF No. 19.) The plaintiff seeks $3 million in compensatory damages, $10 million in punitive damages, and statutory treble damages. (*Id.* at 2.) Before the Court is the defendant's motion to dismiss. (ECF No. 26.) For the reasons below, the motion is granted.

## BACKGROUND

The plaintiff smoked Newport menthol cigarettes for years, beginning in 1998 when he was 14 years old. (ECF No. 19 ¶ 7.) He "remained addicted" through March 2025. (*Id.* ¶ 8.) He alleges that the defendant "intentionally engineered" Newport cigarettes to deliver a level of nicotine in each cigarette that was confirmed by internal studies to cause addiction. (*Id.* ¶ 10.) He also claims that the defendant added menthol "not for flavor but as an anesthetic to cool the throat, mask harshness, and enable deeper, longer inhalation, increasing toxin deposition." (*Id.*

¶ 13.) The plaintiff alleges that the defendant "test-marketed and sold" a different brand of cigarette — the "Next" brand — with a less addictive level of nicotine and no menthol, "proving a feasible, less-addictive alternative that preserved smoking utility." (*Id.* ¶ 11.) He says that the defendant chose to sell Newport cigarettes "because addiction drove repeat sales." (*Id.* ¶ 12.)

Between 1998 and 2003, the plaintiff regularly saw two posters advertising the Newport brand in Queens County. (*Id.* ¶ 16.) One poster was at a bus shelter; it had the text "Alive with Pleasure" with a photograph of young adults playing beach volleyball. (*Id.*) The other poster was at a deli; that read "Smooth & Cool," and had a photograph of a "20-something couple hiking." (*Id.*) The posters had the Surgeon General's warning in small print at the bottom of each poster. (*Id.*) The plaintiff alleges that these advertisements falsely communicated that Newport was a "benign, health-compatible pleasure product" and "omitted any mention of engineered addictiveness or deeper toxin inhalation caused by menthol." (*Id.* ¶ 17.) According to the plaintiff, the defendant had a duty to disclose that Newport cigarettes were engineered to create and sustain addiction, but it concealed those facts. (*Id.* ¶ 15.) The plaintiff alleges that he relied on the ads when he bought his first packs of cigarettes, and as he continued to smoke. (*Id.* ¶ 18.) In April 2025, the plaintiff was diagnosed with lung disease — "severe irreversible airflow obstruction (COPD/emphysema)"— caused by his smoking. (*Id.* ¶ 9.)

On September 26, 2025, the plaintiff filed a state court action against Lorillard Tobacco Company and its successor-in-interest R.J. Reynolds Tobacco Company. (ECF No. 1-3.) The defendant R.J. Reynolds Tobacco Company was served on October 3, 2025, and both defendants removed the case to federal court on November 3, 2025. (ECF No. 1 ¶ 1.) The defendants moved to dismiss the complaint on November 10, 2025. (ECF No. 7.) On January 8, 2026,

Magistrate Judge Peggy Kuo granted the plaintiff's motion to amend the complaint and terminated the motion to dismiss as moot. (*ECF Minute Entry dated Jan. 8, 2026*.)

The amended complaint alleges four claims against R.J. Reynolds Tobacco Company: (1) strict liability for defective design; (2) fraudulent concealment and misrepresentation; (3) deceptive practices under New York General Business Law Section 349; and (4) breach of the implied warranty of merchantability. (ECF No. 19 ¶¶ 20–25.)[1] On January 22, 2026, the defendant moved to dismiss the amended complaint. (ECF No. 26.) The plaintiff opposed on January 26, 2026 (ECF No. 27), and the defendant replied on February 5, 2026 (ECF No. 31). On February 12, 2026, Judge Kuo ordered a stay of discovery pending resolution of the defendant's motion to dismiss. (*ECF Order dated Feb. 12, 2026*.)

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' . . . will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555). A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.* (citation modified). "When ruling on a motion to dismiss, the court must accept as true all factual allegations in the complaint," and "[a]ll reasonable inferences must be drawn in favor of the non-moving party." *Watral v. Silvernails*

[1] The plaintiff did not name Lorillard Tobacco Company in the amended complaint. (*See* ECF No. 19.)

*Farms, LLC*, 177 F. Supp. 2d 141, 147 (E.D.N.Y. 2001) (citations omitted), *aff'd sub nom. Watral v. Silvernails Farms LLC.*, 51 F. App'x 62 (2d Cir. 2002).

The Court construes *pro se* complaints liberally and interprets them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). However, the Court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist;" accordingly, "[w]hen a *pro se* plaintiff has altogether failed to satisfy a pleading requirement, the Court must dismiss the claim." *Malachi v. Postgraduate Ctr. for Mental Health*, No. 10-CV-3527, 2013 WL 782614, at *1 (E.D.N.Y. Mar. 1, 2013) (citations omitted).

## DISCUSSION

### I. Count I: Defective Design

"[T]o plead a design defect claim, 'a plaintiff must allege that: (1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury.'" *Parkes v. Latch, Inc.*, 810 F. Supp. 3d 405, 417 (S.D.N.Y. 2025) (quoting *S.F. v. Archer Daniels Midland Co.*, 594 F. App'x 11, 12 (2d Cir. 2014) (summary order)). The second prong requires that the plaintiff plead that a "safer, feasible design alternative existed at the time of manufacture." *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 83 (S.D.N.Y. 2001). "These [first] two prongs, grouped together, are often referred to as the risk-utility balancing test used to determine whether a product is defective or 'unreasonably dangerous.'" *Id.* at 84. A product is defective under the risk-utility test "if a reasonable person, who knew of the defect at the time the product was manufactured, would have concluded that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner." *Gonzalez by Gonzalez v. Morflo Indus., Inc.*, 931 F. Supp. 159, 164 (E.D.N.Y. 1996).

Courts have found, however, that cigarettes "do[] not fit comfortably" within the risk-utility analysis because they "are quite incapable of being made safe for their intended and ordinary use.'" *See Mulholland v. Philip Morris USA, Inc.*, No. 05-CIV-9908, 2007 WL 9636792, at *6 (S.D.N.Y. July 24, 2007), *aff'd*, 598 F. App'x 21 (2d Cir. 2015), *as amended* (Mar. 25, 2015). The "only 'utility' of a cigarette is to gratify smokers' desires for a certain experience." *Adamo v. Brown & Williamson Tobacco Corp.*, 11 N.Y.3d 545, 549 (2008). New York law therefore requires plaintiffs bringing design defect claims involving cigarettes to allege that the alternative design was "as acceptable to consumers" or "as satisfying as regular cigarettes." *Tuosto v. Philip Morris USA Inc.*, 672 F. Supp. 2d 350, 365 (S.D.N.Y. 2009) (citing *Adamo*, 11 N.Y.3d at 550).

The plaintiff claims that the defendant's Newport design was defective because it contained a level of nicotine known to cause addiction and contained menthol, which enabled deeper inhalation of toxins. (ECF No. 19 ¶ 21.) He alleges that "a feasible, less-addictive alternative existed, the risk of addiction outweighed any utility gained from higher nicotine, and the defect proximately caused" the plaintiff's lung disease. (*Id.*) The plaintiff says that the "Next" brand, which had a lower level of nicotine and no menthol, was the feasible, less addictive alternative. (*Id.* ¶¶ 11, 21.) According to the defendant, the "Next" brand cigarette design would "transform, rather than modestly redesign" the Newport product. (ECF No. 26-1 at 16.)

The plaintiff does not claim that the proposed alternative design was acceptable to consumers. On the contrary, the complaint suggests that the defendant tested and sold the "Next" brand, but consumers — including the plaintiff — rejected it in favor of the Newport brand. (*See* ECF No. 19 ¶ 11.) Under these circumstances, the plaintiff has not alleged that a

feasible alternative design was equally acceptable to consumers. *See Tuosto*, 672 F. Supp. 2d at 365 (rejecting the claim that the Next brand was a functional alternative design because the plaintiff did not allege it was as acceptable to consumers as other cigarettes). Accordingly, the design defect claim is dismissed.

**II. Count II: Fraudulent Concealment and Misrepresentation**

The defendant asks the Court to dismiss the plaintiff's fraud claim on preemption grounds, for failure to state a claim, and because the claim is time-barred. (ECF No. 26-1 at 9–13.) The fraud claim is preempted by the Federal Cigarette Labeling and Advertising Act ("FCLAA"). Accordingly, the Court does not reach the defendant's other arguments.

"Congress enacted the [FCLAA] in 1965 in response to the Surgeon General's determination that cigarette smoking is harmful to health." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008). Congress amended the Act in 1969 to, among other things, broaden its preemption provision. *Id.* The amended Act contains two express preemption provisions:

> Section 5(a) protects cigarette manufacturers from inconsistent state labeling laws by prohibiting the requirement of additional statements relating to smoking and health on cigarette packages. Section 5(b) . . . provides that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

*Id.* at 78–79 (quoting 15 U.S.C. § 1334). The Supreme Court held that the FCLAA preempts both state common law and statutory causes of action based on a failure to warn of smoking and health risks in cigarette advertising. *See Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 530–31 (1992). Not all common law claims fall within the scope of this preemption provision; the Court concluded that fraudulent misrepresentation and concealment claims were not preempted "insofar as those claims rely on a state-law duty to disclose such facts through channels of

communication other than advertising or promotion" or on a duty not to make false statements. *Id.* at 528–29.

The plaintiff's claim "is founded squarely upon a duty based on smoking and health, as [the plaintiff] alleges that, in its advertising, [the defendant] failed to disclose material facts concerning the risks of smoking." *Tuosto*, 672 F. Supp. 2d at 358. The only allegations supporting the plaintiff's fraud claim are that the defendant did not disclose the risks of smoking Newport cigarettes — including the risk of addiction and the risk of "deeper toxin inhalation" — in two poster advertisements, both of which included the FCLAA-mandated Surgeon General warning. (ECF No. 19 ¶¶ 15–19.) The plaintiff does not allege that the defendant made false statements or made statements through channels other than advertising. (*See id.*) "[C]laims that a tobacco company should have made further disclosures in its advertising and promotional statements" are preempted, "because it is little more than a requirement that additional warnings be included in advertising and promotional materials." *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 81 (N.D.N.Y. 2000). Therefore, the claim is preempted by the FCLAA and is dismissed.

## III. Count III: Deceptive Practices

The plaintiff also alleges a violation of New York General Business Law Section 349 for deceptive practices. (ECF No. 19 ¶ 24.) The sole allegation supporting this claim is: "Reynolds' consumer-oriented campaign was materially misleading; Plaintiff suffered injury; statutory treble damages up to $1,000 are warranted." (*Id.*) The complaint is devoid of any factual support for these assertions. The plaintiff makes only legal conclusions, which are not sufficient to withstand a motion to dismiss. *See Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, the claim is also preempted as explained above. Although it is difficult to determine the basis for this claim because there are no factual allegations, the plaintiff appears to claim that the defendant should be liable for failing to warn consumers of risks associated with smoking Newport cigarettes. Those claims are preempted by Section 5(b) of the FCLAA. *See Cipollone*, 505 U.S. at 524.

**IV. Breach of Implied Warranty of Merchantability**

The plaintiff's fourth claim alleges a breach of the implied warranty of merchantability. (*See* ECF No. 19 ¶ 25.) "A breach of the implied warranty of merchantability occurs when the product at issue is 'unfit for the ordinary purposes for which such goods are used.'" *Warren v. Coca-Cola Co.*, 670 F. Supp. 3d 72, 88 (S.D.N.Y. 2023) (quoting *Santiful v. Wegmans Food Markets, Inc.*, No. 20-CV-2933, 2023 WL 2457801, at *6 (S.D.N.Y. 2023)). "Th[e] implied warranty is not breached if the cigarettes were minimally safe when used in the customary, usual, and reasonably foreseeable manner." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 434 (2d Cir. 2013).

The plaintiff alleges this: "Goods failed the ordinary-purpose test because a cigarette engineered to create compulsive use is not 'fit' for ordinary consumption; UCC § 2-314 breached." (ECF No. 19 ¶ 25.) Like the plaintiff's statutory claim, this claim has no factual detail and cannot survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678. Nor does the plaintiff sufficiently allege that Newport cigarettes were unfit for their ordinary, and only, purpose — to "satisfy[] the consumer." *Adamo*, 11 N.Y.3d at 551. The plaintiff does not allege that the cigarettes were not smokable "or otherwise not of merchantable quality." *See Warren*, 670 F. Supp. 3d at 89 (dismissing implied warranty claim where the plaintiff did not allege alcoholic seltzers were "not drinkable or otherwise not of merchantable quality"). This claim is dismissed.

## CONCLUSION

Accordingly, the motion to dismiss is granted, and the amended complaint is dismissed. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
August 12, 2026